# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**CHRISTOPHER DARNELL EUGENE ROACH, #144575**          PETITIONER

VERSUS                                                No. 1:11-cv-00370-HSO-RHW

**CHRISTOPHER EPPS and**
**KENNETH REAGANS**                                    RESPONDENTS

## PROPOSED FINDINGS OF FACT AND RECOMMENDATION

Before the Court are [1] the petition for federal habeas corpus relief filed October 6, 2011 by Petitioner Christopher Darnell Eugene Roach pursuant to 28 U.S.C. § 2254, and [6] the Respondents' November 7, 2011 response to the petition. Although Roach requested and was granted an extension of time until January 1, 2012 to file a reply to the response, he filed nothing further, and the matter is now ripe for ruling. Upon review and consideration of the pleadings, records on file, and relevant legal authority, the undersigned is of the opinion that the petition for federal habeas relief should be denied.

## FACTS AND PROCEDURAL HISTORY

On April 1, 2007, Christopher Roach came from Jackson, MS to Gulfport, MS with his ex-wife Vonchartter Bailey, and the two checked into the Sun Suites motel on Highway 49. On the drive to Gulfport, Roach and Bailey snorted cocaine and drank alcohol; they continued these activities, and also smoked marijuana after they got their motel room. Roach had on two occasions been shot, and he always carried a loaded pistol. At some point during the afternoon Bailey took the pistol from Roach's bag, and refused Roach's requests to give him the gun. Roach came from behind Bailey, bear-hugged her in an effort to take the gun, and was shot in the

hand as they struggled. Roach took the gun and shot Bailey six times, inflicting seven wounds, resulting in her death. Roach then left the motel room carrying the gun and leaving a trail of blood as he made his way from the motel to a nearby gas station, stopping at the open door of another room at the motel where he dropped the gun. The occupants of that room called police, and testified Roach was covered in blood. [7-2, pp. 33-38] Still leaving his blood trail, Roach went to the gas station, whose owner also called police who quickly responded to the calls from the motel and the gas station where Roach was still located. Police were eventually able to subdue and take Roach into custody.[1] Roach claims he blacked out after being shot in the hand and remembers nothing until he awoke in jail.[2]

Police officers followed the blood trail from Roach through the parking lots and all the way back to Room 219 at the motel where they found Bailey's body and several shell casings. In the breezeway in front of Room 229, they found Roach's jeans with his wallet, another wallet, his cocaine and $1700 in the pockets. They also retrieved the gun from the floor of Room 208 where Roach had dropped it. The gun still had a live round in the chamber, and another live round was recovered in the blood trail on the breezeway in front of Room 227. [7-2, pp. 47-50] Forensic examination established the shell casings were fired from the gun, and Roach had particles indicative of gunshot residue on his right hand.[3] An autopsy established that Bailey had

---

[1] During his encounter with police officers, Roach ignored their orders and instructions, stripped naked in the parking lot and made obscene gestures to those in the area. Officers twice sprayed him with pepper spray to no effect, and he was eventually wrestled to the ground by the gas station owner after he appeared to be trying to take the owner's truck.

[2] The facts are taken from the trial transcript [7-2] and the synopsis contained in the appellate court decision, *Roach v. State*, 39 So. 3d 967, 968 (Miss. App. 2010).

[3] By the time officers took the samples to check for gunshot residue, Roach's left hand (where he had been shot) had been treated and was heavily bandaged. [7-2, p. 62]

seven wounds which the pathologist testified were caused by six close range gunshots,[4] the most serious of which entered the back of Bailey's neck and her back at the base of her neck and traveled downward through her body, through the heart, liver, both lungs, her diaphragm and into her abdomen, producing massive bleeding and death. [7-2, pp. 100-105]. The firearms and tool mark examiner testified the gun requires one pull of the trigger each time for the gun to fire. [7-2, p. 87]

On November 13, 2007, Roach was indicted for Bailey's murder. [7-1, p. 10] Following a two-day trial, and after being instructed on both murder and manslaughter [7-1, pp. 45-46, 56-58], a Harrison County Circuit Court jury found Roach guilty of murder, and the trial court accordingly sentenced him to serve life imprisonment in the custody of the Mississippi Department of Corrections on November 6, 2008. [7-1, pp. 59-60] Roach appealed, challenging the sufficiency of the evidence to support a murder conviction, and claiming his conduct constituted only manslaughter. The Mississippi Court of Appeals affirmed Roach's conviction and sentence June 22, 2010. *Roach v. State*, 39 So.3d 967 (Miss. App. 2010).

On December 21, 2010, Roach filed an application for leave to file a motion for post-conviction relief in the trial court, claiming his trial counsel "was ineffective causing the Defendants (*sic*) trial to become a fundamental miscarriage of justice." [7-5, pp. 37-63] Roach argued his attorney failed to further investigate after Roach told counsel he had been shot on two prior occasions, that he suffered from post traumatic shock syndrome for which he was under psychiatric care when the incident occurred, and that he had blackout spells. [7-5, p. 39] Roach contended his attorney should have contacted his psychiatric doctor to support his claim that his

---

[4]One of the gunshots went through Bailey's right wrist and into her right knee where the projectile was found. [7-2, p. 105]

killing Bailey was manslaughter, and that counsel should have investigated the Coroner's report and the gunshot residue report which supported Roach's claim that Bailey had the pistol when it was first discharged. *Id*. Roach attached to his post conviction application pages of police reports and the autopsy report, and a two-page document titled "psychiatric evaluation" from Hinds Behavioral Health Systems in Jackson, MS. The latter document is dated August 31, 2006, and notes that Roach was referred to the reporting agency by University Medical Center for follow up after being shot twice in the head and once in the lungs during a robbery. The report notes that since he was shot, Roach has "had an increase in anger. He has had angry outburst at home..." The report states Roach's only drug abuse was marijuana and occasionally drinking too much. The diagnostic impression was posttraumatic stress disorder, and he was placed on medications for sleep, for "impulse control," and for post traumatic stress. After receiving the State's response to the application and considering the matter, the Mississippi Supreme Court denied Roach's post conviction application by order entered April 6, 2011, holding that Roach failed to satisfy either prong of the ineffective assistance test set out in *Strickland v. Washington*, 466 U.S. 688 (1984), and that he failed to make a substantial showing of the denial of a state or federal right. [6-2] The Supreme Court denied Roach's motion for rehearing of that decision on May 3, 2011 [6-3], and his petition for writ of certiorari on June 3, 2011. [6-4] In his federal habeas petition, Roach asks this Court to reverse and remand his case for resentencing.

## LAW AND ANALYSIS

The only ground for relief Roach states in his habeas petition is the same as that presented to the Mississippi Supreme Court in his application to proceed with post-conviction relief, and which that court denied on the merits,[5] *i.e.*, that his attorney was "ineffective causing [his] trial to

---

[5]*See*, *Harrington v. Richter*, 131 S.Ct. 770 (2011).

become a fundamental miscarriage of justice by not investigating available mitigating evidence that showed Roach was under psyciatric (*sic*) care for post traumatic shock syndrome which supported the fact that deliberate design was not proven subjecting the trial to produce an unreliable verdict." [1, p. 5]

A federal habeas court does not sit as a super appeals court, nor does it conduct *de novo* review of state court decisions. This Court's review in such cases is governed by 28 U.S.C. § 2254(d), which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

Subsection (d)(1) applies to mixed questions of law and fact, and Subsection (d)(2) permits federal court relief only if the state court adjudication of the claim resulted in a decision based on an unreasonable determination of the facts in light of the evidence. *See*, respectively, *Gachot v. Stalder*, 298 F.3d 414, 417-418 (5th Cir. 2002), and *Lockhart v. Johnson*, 104 F.3d 54, 57 (5th Cir. 1997). Because Roach's claim of ineffective assistance of counsel presents mixed questions of fact and law, it is governed by 2254(d)(1), and this Court may grant relief only if it determines that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law.

The Mississippi Supreme Court order denying Roach's post-conviction application correctly identified the law applicable to the issue Roach presented, *Strickland v. Washington*,

466 U.S. 668 (1984). *Strickland* provides the standard for determining ineffective assistance claims, requiring that one claiming ineffective assistance show that (1) his counsel's performance fell below an objective standard of reasonableness, that it was deficient to the extent that counsel failed to function as the counsel guaranteed by the Sixth Amendment, <u>and</u> (2) the defendant was so prejudiced by his counsel's deficient performance that he was deprived of a fair trial. *Strickland*, 466 U.S. at 687-88. Failure to establish both prongs of the test warrants rejection of the claim. *Moawad v. Anderson*, 143 F.3d 942, 946 (5th Cir. 1998); *Bates v. Blackburn*, 805 F.2d 569, 578 (5th Cir. 1986)(overruled on other grounds). The state court held Roach failed to establish either of the prongs of the test. This Court cannot grant habeas relief unless it finds the state court's application of this law was objectively unreasonable. *Williams v. Taylor*, 529 U.S. 362, 409 (2000).

To prove prejudice, the second prong of the test, the petitioner must demonstrate that the result of the proceedings would have been different but for counsel's deficient performance, that counsel's performance rendered the trial result fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995) *cert. denied*, 516 U.S. 1005 (1995); *Bates*, 805 F.2d at 578. "Furthermore, it is not sufficient that a habeas petitioner merely alleges a deficiency on the part of counsel. He must affirmatively plead the resulting prejudice in his habeas petition." *Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988)(citing *Hill v. Lockhart*, 474 U.S. 52, 59-61, (1985)); *see also*, *Bonvillain v. Blackburn*, 780 F.2d 1248, 1253 (5th Cir. 1986), *cert. denied*, 476 U.S. 1143 (1986)(petitioner must show there is a reasonable probability that but for counsel's inadequate representation the result of the proceeding would be different). The Constitution does not guarantee perfect or error-free representation. *See Washington v. Watkins*, 655 F.2d 1346, 1367 (5th Cir. 1981), *cert. denied*, 456 U.S. 949 (1982).

Roach alleges his counsel failed to investigate and present evidence regarding his "psychiatric state of mind." [2, p. 4]  Review of the record in this case leaves little doubt that defense counsel's strategy in the face of the virtually unsurmountable physical evidence against Roach, was to focus on the element of intent – to try to show Roach did not intend to kill Bailey when he pulled the trigger six times, inflicting seven gunshot wounds on Bailey, before leaving her dead or bleeding to death in the motel room.  In opening statement, counsel told the jury Roach had been shot in the face a year before and has an artificial eye as a result, that Roach has always carried a gun since that time.  Roach shot Bailey, but counsel argued the shooting was without deliberate design to kill her, that instead, the shooting was in the heat of passion.  [7-2, pp. 16-17]

Defense Counsel called Roach's mother to testify that despite their short-lived marriage (about two and half years according to Roach), Roach and Bailey had a good relationship and were friends, and that when she spoke with the two of them by phone the day of the killing, both of them seemed to be in good spirits.  Roach's mother also testified Roach had been shot several times, and robbed the last time. [7-2, pp. 110-117]  Roach also testified he and Bailey had a good relationship.  They had been together most of the time from Friday until the Sunday when the killing occurred – she spent the night with him on Friday, and on Saturday, he went to her workplace and stayed there with her she worked her night shift as a security guard.  Sunday morning the two collected their things and left Jackson for Gulfport, snorting Roach's cocaine and drinking liquor and beer as they traveled to the Coast, and after they got the motel room, when they also began smoking Roach's marijuana.

Roach testified about being shot previously.  When his counsel specifically asked him about the impact that being shot and robbed had on him, Roach stated it "messed [him] up," that

he lost his eye, and the bullets are still in his head [7-2, pp. 115-127], but he said nothing about having seen a psychiatrist following that incident. On cross-examination, Roach testified he has blackouts from having previously been shot, that he has "been having them regularly" since he was shot, but again, despite the opportunity, Roach said nothing about being under psychiatric care. He stated he had no reason to hurt Bailey, that she said nothing to enrage him, she just would not give his gun back; he was concerned about himself getting shot again, getting killed. [7-2, pp. 138-141] In closing argument, Defense Counsel reiterated that this was a heat-of-passion killing, brought on by Roach's being shot in the hand; and urging that Roach should be convicted of manslaughter rather than murder. Counsel succeeded in getting the trial court to grant jury instructions on manslaughter, but the jury found Roach guilty of murder.

Even if Roach had given his attorney the two-page 2006 psychiatric report which he attached to his *pro se* application to file a post-conviction motion, Counsel might well have declined to use it because of it contained statements regarding Roach's "increase in anger;" "angry outburst at home," Roach's statement that his only drug abuse was marijuana and occasionally drinking too much (which was contradicted by his admitted use of cocaine use on the date of the crime), and the fact that he was given medication for "impulse control." A court's scrutiny of counsel's performance is highly deferential, and the petitioner must overcome a strong presumption that counsel acted reasonably under the circumstances and with a sound trial strategy. *Strickland*, 466 U.S. at 689. *See also, Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994); *Messer v. Kemp*, 760 F.2d 1080, 1090 (11th Cir. 1985)(presumption is that counsel's actions were "within the wide range of reasonable professional assistance..."). All circumstances are considered in determining whether counsel's performance was reasonable under prevailing professional standards. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). Roach has not

presented evidence to over come the presumption that under all the circumstances, his attorney's actions fall within the ambit of reasonable professional assistance and sound trial strategy.

## RECOMMENDATION

Based on the Petition, Respondent's answer, the record, and the relevant legal authority, the undersigned finds no unreasonable application of clearly established Federal law to the facts of Roach's case and recommends that his Application for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be denied and the petition, dismissed.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3), *L.U.Civ.R.*, after service of this Report and Recommendation, each party has fourteen (14) days to file with the clerk, serve upon the other parties and submit to the assigned District Judge his written objections to the Report and Recommendation. Within seven (7) days of service of the objection, the opposing party must either serve and file a response or notify the District Judge that he does not intend to respond to the objection.

An objecting party must specifically identify findings, conclusions, and recommendations to which he objects; the District Court need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen (14) days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion accepted by the District Court to which he did not object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Signed this 5th day of October, 2012.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE